| | |
|---|---|
| PROTECO Landfill Superfund Site Generator Parties Group, | |
| *Plaintiff* | |
| vs. | |
| Colorcon P.R. LLC, | |
| Puerto Rico Investment Development Company, | |
| Thermo King de Puerto Rico, Inc., | |
| Colgate-Palmolive de Puerto Rico, Inc., | Civil Action No. 23-1500 |
| Crown Holdings, Inc., | |
| CROWN Beverage Packaging Puerto Rico, Inc., | |
| Energy Transfer (R&M), LLC, | |
| Mars, Inc., and | |
| Pepsi-Cola Manufacturing Co. | |
| *Defendants.* | |

## FIRST AMENDED COMPLAINT FOR COST RECOVERY, CONTRIBUTION, AND DECLARATORY RELIEF UNDER THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT ("CERCLA")

Plaintiff, the PROTECO Landfill Superfund Site Generator Parties Group (the "GPG" or "Plaintiff"), by and through undersigned counsel, files this action for cost recovery and contribution under sections 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, for response costs that the GPG and its members have expended to date and will expend in the future to complete a Remedial Investigation / Feasibility Study ("RI/FS") as required by the Administrative Settlement Agreement and Order on Consent for Remedial Investigation / Feasibility Study as

1

amended (the "RI/FS ASAOC") for the PROTECO Superfund Site in Peñuelas, Puerto Rico, a Federally listed Superfund Site on the National Priorities List (the "PROTECO Site").

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter under CERCLA section 113(b), 42 U.S.C. § 9613(b), the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. § 1331.

2.    Venue is proper in this Court pursuant to CERCLA section 113(b), 42 U.S.C. § 9613(b) because the actual or threatened releases are taking place and have taken place in this district.

## THE PARTIES

### *Plaintiff*

3.    Plaintiff is GPG, an unincorporated association.

4.    The members of the GPG listed on Attachment A to this Complaint (collectively, the "GPG Members") have assigned their claims, defenses and remedies to the GPG for response costs for the work required by the RI/FS ASAOC under CERCLA and Puerto Rico law against any other persons or public or private entities that are not members of the GPG (except for contract or insurance claims that are not relevant here), and they agree to be bound by any rulings entered by the Court in this action.

### *Defendants*

5.    Defendant Colorcon P.R. LLC ("**Colorcon**") is a limited liability company organized and existing under the laws of Puerto Rico.  Colorcon was formed as Colorcon P.R. Inc. and was converted into a limited liability company on December 31, 2013.  Colorcon manufactured color dispersions at its facility in Puerto Rico and arranged for disposal of hazardous substances at the PROTECO Site.

6.     Defendant Colgate-Palmolive de Puerto Rico, Inc. ("**Colgate-Palmolive**") is a corporation organized under the laws of Delaware and is successor in interest to Mennen de Puerto Rico, Ltd. ("Mennen").  Mennen had at least one manufacturing facility in Puerto Rico and arranged for disposal of hazardous substances at the PROTECO Site.  In 1996, Mennen, Colgate-Palmolive Inc., and Colgate Juncos, Inc. merged, with the surviving entity changing its name to Colgate-Palmolive de Puerto Rico, Inc.

7.     Defendant Crown Holdings, Inc. ("**Crown Holdings**") is a corporation organized under the laws of Pennsylvania and, upon information and belief, is the successor to Central States Can Company of Puerto Rico ("Central States Can").  Central States Can was a subsidiary of the Van Dorn Company and arranged for the disposal of hazardous substances at the PROTECO Site.  Central States Can became a subsidiary of Crown Cork & Seal Co. in 1993 when Crown Cork & Seal Co. acquired the Van Dorn Company.  In 2003, Crown Cork & Seal Co. reorganized and created the parent holding company, Crown Holdings.  In 2011, Crown Holdings dissolved Central States Can and, upon information and belief, completed a de facto merger with Central States Can.

8.     Defendant CROWN Beverage Packaging Puerto Rico Inc. ("**CROWN Beverage**") is a corporation organized under the laws of Delaware and is the successor to Crown Cork of Puerto Rico, Inc.  In 2005, Crown Beverage Packaging Puerto Rico Inc. was incorporated under the laws of Puerto Rico as a successor to Crown Cork of Puerto Rico, Inc.  In 2008, CROWN Beverage Packaging Puerto Rico Inc. was reinstated in Delaware.  Crown Cork of Puerto Rico, Inc. arranged for disposal of hazardous substances at the PROTECO Site.

9.     Defendant Energy Transfer (R&M), LLC ("**Energy Transfer**") is a limited liability company organized under the laws of Pennsylvania and is the successor in interest to

Yabucoa Sun Oil Company ("Yabucoa Sun Oil"), a corporation organized under the laws of Puerto Rico. Yabucoa Sun Oil operated a petroleum refining facility in Yabucoa, Puerto Rico and arranged for the disposal of hazardous substances from that facility at the PROTECO Site. In 1985, Yabucoa Sun Oil (a Puerto Rico corporation) was merged into YSOC, Inc. (a Delaware corporation), which then changed its name to Yabucoa Sun Oil Company, Inc. In 1988, Yabucoa Sun Oil Company, Inc. was liquidated by its parent company and the assets and liabilities transferred to its sister company, Puerto Rico Sun Oil Company. In 2001, Puerto Rico Sun Oil Company was merged with and into Puerto Rico Sun Oil Company LLC (a Delaware limited liability company). In 2018, Puerto Rico Sun Oil Company LLC merged with and into Sunoco (R&M), LLC (a Pennsylvania limited liability company), which then changed its name to Energy Transfer (R&M), LLC effective April 19, 2021.

10.     Defendant Mars, Inc. ("**Mars**") is successor in interest to Life Savers Manufacturing, Inc. and/or Life Savers Inc. ("Life Savers"), which arranged for the disposal of hazardous substances at the PROTECO Site. Life Savers, Inc. was a subsidiary of Nabisco Brands Inc., RJR Nabisco Holdings Corp., RJR Nabisco, Inc., and/or Nabisco Holdings Corp. In 2000, Kraft Foods, Inc. acquired Nabisco Holdings Corp.—including Life Savers—as part of a larger corporate transaction. In 2005, Kraft Foods, Inc. sold its sugar confectionery assets— including Life Savers—to The William Wrigley Jr. Company. In 2008, Defendant Mars acquired the William Wrigley Jr. Company. Upon information and belief, Mars is the successor in interest to Life Savers.

11.     Defendant Pepsi-Cola Manufacturing Co. ("**Pepsi-Cola**"), a corporation organized under the laws of Delaware, owned and/or operated a facility in Cidra, Puerto Rico

and a facility in Caguas Puerto, Rico. Pepsi-Cola arranged for the disposal of hazardous substances from both of these facilities at the PROTECO Site.

12.     Defendant **Puerto Rico Investment Development Company** is a corporation created and existing under the laws of Delaware. In 2002, the Puerto Rico Industrial Development Company completed a stock purchase of all of the shares of Star Kist Caribe, Inc., which owned and operated a facility in Puerto Rico and which arranged for disposal of hazardous substances at the PROTECO Site. After the sale to Puerto Rico Industrial Development Company, Star Kist changed its name to Puerto Rico Investment Development Company.

13.     Defendant Thermo King de Puerto Rico Inc. ("**Thermo King**") is a company organized under the laws of Delaware and is successor in interest to various Westinghouse entities that conducted business in Puerto Rico, including but not limited to Westinghouse de Puerto Rico, Inc.; Productos Westinghouse, Inc.; Westinghouse Electronics Inc.; and the entities known as "Westinghouse P.F.," and "N.P.F., a division of Westinghouse P.R." (the "Westinghouse Entities"). The Westinghouse Entities arranged for disposal of hazardous substances at the PROTECO Site. In 1984, the Westinghouse Entities were merged together and into Westinghouse de Puerto Rico, Inc. In 1997, Westinghouse de Puerto Rico Inc. was sold, and its name was changed to Thermo King de Puerto Rico Inc.

## FACTS

### The PROTECO Site

14.     The PROTECO Site operated as a hazardous waste landfill approximately from 1975 through 1999.

15.     In 1975 Servicios Carbareón, Inc. began landfilling operations at the PROTECO Site. In 1985, Servicios Carbareón, Inc. changed its name to Protección Técnica Ecológica Corp.

("PROTECO"), which was succeeded by Resources Management, Inc. doing business as PROTECO.

16.     In 1980, PROTECO applied to the United States Environmental Protection Agency ("USEPA") for a permit to operate as a treatment, storage, and disposal facility ("TSDF") under RCRA Part A. The PROTECO Landfill operated as a hazardous waste landfill under interim status while its application for a RCRA permit was pending. During this time, the PROTECO Landfill accepted a variety of wastes, including hazardous substances, from Defendants.

17.     Hazardous waste brought to the PROTECO Landfill was deposited in one or more of 17 unlined waste units. Drums brought to the PROTECO Landfill were either stored directly on the ground, were buried, or had their contents transferred to surface impoundments for treatment.

18.     Inspections of the PROTECO Landfill by the Puerto Rico Environmental Quality Board ("PREQB") and USEPA resulted in citations for unpermitted waste disposal activity, inadequate groundwater monitoring, lack of runoff control, waste deposition in unlined waste units, drums leaking contents onto exposed soil, and mixing of potentially incompatible wastes.

19.     In 1991, PREQB referred the PROTECO Landfill to USEPA for investigation.

20.     In around 1991, PROTECO's application for a TSDF operating permit was denied, and PROTECO could no longer operate as a hazardous waste landfill under RCRA.

21.     In 1996, PROTECO submitted plans for closure of the hazardous waste units at the PROTECO Landfill and in 1997, PROTECO agreed to meet RCRA closure and post-closure requirements for the PROTECO landfill. Subsequently, some limited closure and post-closure activities were conducted by PROTECO before it abandoned the PROTECO Site.

## Waste Sent to the PROTECO Landfill by Defendants

### *Colorcon, P.R. LLC*

22.     Colorcon arranged for the disposal of hazardous substances at the PROTECO Site.  Colorcon may also have arranged for transport of hazardous substances with Servicios Carbareón that were disposed of at the PROTECO Site.

23.     Waste sent by Colorcon to the PROTECO Site included colored wastewater from Colorcon's solar lagoons.  Colorcon's solar lagoon wastewater is known to have contained cadmium color (dye or pigment), and oil and grease, and Colorcon's dye is known to have contained mercury.  Colorcon used ethyl alcohol, isopropyl alcohol, butyl alcohol, cyclohexane, ethyl lactate, cellosolve, methyl ethyl ketone, acetone, methanol, titanium dioxide, other dyes and/or pigments, oxides, polyvinylpyrrolidone, diethyl phthalate, and sodium hypochlorite, and these materials would have been present in Colorcon's solar lagoon and would have been contained in the waste that it sent to the PROTECO Site.

24.     The waste sent by Colorcon to the PROTECO Site contained CERCLA hazardous substances listed at 40 C.F.R. § 302.4, including mercury, cadmium, butyl alcohol, cyclohexane, methyl ethyl ketone, acetone, methanol, sodium hypochlorite, and diethyl phthalate, as well as wastes with RCRA characteristic hazardous waste code D001 (ignitable hazardous waste) including ethyl alcohol, isopropyl alcohol, butyl alcohol, cyclohexane, ethyl lactate, cellosolve, methyl ethyl ketone, acetone, and methanol.

25.     Hazardous substances sent by Colorcon to the PROTECO Site have caused the GPG and GPG Members to incur response costs consistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP").

### *Colgate-Palmolive*

26.     Colgate-Palmolive is the successor in interest to Mennen de Puerto Rico, Ltd. ("Mennen"). Mennen arranged for the disposal of hazardous substances at the PROTECO Site. Mennen may also have arranged for transport of hazardous substances with Servicios Carbareón that were disposed of at the PROTECO Site.

27.     Waste sent by Mennen to the PROTECO Site included but was not limited to waste Mennen Speed Stick deodorant, waste propylene glycol, and process water containing hazardous substances.  Waste generated by the Mennen facility is known to have contained hazardous substances including methyl alcohol, acetone, toluene, methylene chloride, methyl ethyl ketone, 1,1,1-trichloroethane, 1,4-dioxane, perchloroethylene, and xylene.  Waste generated by the facility and sent to the PROTECO Site would have contained these same hazardous substances.  Process water from the facility also contained phenol and/or phenol compounds.

28.     The waste sent by Mennen to the PROTECO Site contained CERCLA hazardous substances listed at 40 C.F.R. § 302.4, including methyl alcohol, acetone, toluene, methylene chloride, methyl ethyl ketone, 1,1,1-trichloroethane, 1,4-dioxane, perchloroethylene, xylene, phenol and/or phenol compounds.

29.     Hazardous substances sent by Mennen to the PROTECO Site have caused the GPG and GPG Members to incur response costs consistent with the NCP.

*Crown Holdings*

30.     Upon information and belief, Crown Holdings is the successor to Central States Can, which arranged for the disposal of hazardous substances at the PROTECO Site. Central States Can may also have arranged for transport of hazardous substances with Ponce Waste Disposal that were disposed of at the PROTECO Site.

31. Waste sent by Central States Can to the PROTECO Site included but was not limited to waste solvent.

32. The waste sent by Central States Can to the PROTECO Site contained CERCLA hazardous substances listed at 40 C.F.R. § 302.4, including hexane, toluene, and cyclohexane, as well as wastes with RCRA characteristic hazardous waste code F003 and F005 (flammable liquid) and the RCRA-regulated substances ethanol and isopropanol.

33. Hazardous substances sent by Central States Can to the PROTECO Site have caused the GPG and GPG Members to incur response costs consistent with the NCP.

### CROWN Beverage

34. CROWN Beverage is the successor to Crown Cork of Puerto Rico, Inc. ("Crown Cork of Puerto Rico").

35. Crown Cork of Puerto Rico arranged for disposal of hazardous substances at the PROTECO Site.

36. Waste sent by Crown Cork of Puerto Rico to the PROTECO Site included but was not limited to wastewater treatment plants sludge.

37. The waste sent by Crown Cork of Puerto Rico to the PROTECO Site contained CERCLA hazardous substances listed at 40 C.F.R. § 302.4 including but not limited to one or more polycyclic aromatic hydrocarbons ("PAHs"); benzene, toluene, ethylbenzene and xylene ("BTEX"); BTEX-compounds; and other volatile organic compounds ("VOCs").

38. Hazardous substances sent by Crown Cork of Puerto Rico to the PROTECO Site have caused the GPG and GPG Members to incur response costs consistent with the NCP.

### Energy Transfer

39.     Energy Transfer is the successor in interest to Yabucoa Sun Oil Company ("Yabucoa Sun Oil").  Yabucoa Sun Oil arranged for the disposal of hazardous substances at the PROTECO Site. Yabucoa Sun Oil may also have arranged for transport of hazardous substances with Servicios Carbareón that were disposed of at the PROTECO Site.

40.     Waste sent by Yabucoa Sun Oil to the PROTECO Site included but was not limited to oil sludge, sand, spent tar, unrecoverable material from the facility's ballast water basin, asbestos, tank bottoms, spent catalyst, spent filters, and used lime sludge.

41.     The waste sent by Yabucoa Sun Oil to the PROTECO Site contained CERCLA hazardous substances listed at 40 C.F.R. § 302.4, including but not limited to lead, mercury, and other metals, PAHs, BTEX and BTEX-compounds, and asbestos.

42.     Hazardous substances sent by Yabucoa Sun Oil to the PROTECO Site have caused the GPG and GPG Members to incur response costs consistent with the NCP.

### *PepsiCo*

43.     PepsiCo arranged for the disposal of hazardous substances at the PROTECO Site. PepsiCo may also have arranged for transport of hazardous substances with Servicios Carbareón that were disposed of at the PROTECO Site.

44.     Waste sent by PepsiCo to the PROTECO Site included but was not limited to lab-packs, acid liquid, potassium benzoate, caffeine anhydrous, sodium benzoate, citric acid, sodium saccharin, and sodium chloride, and other waste described by a RCRA ledger as "liquid hazardous and solid wastes."

45.     The waste sent by PepsiCo to the PROTECO Site contained wastes with RCRA characteristic hazardous waste codes D001, D002 and D007, including flammable liquids, acid liquids and extract flavoring.

46.     Hazardous substances sent by PepsiCo to the PROTECO Site have caused the GPG and GPG Members to incur response costs consistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP").

*Mars*

47.     Upon information and belief, Mars is successor in interest to Life Savers.  Life Savers arranged for the disposal of hazardous substances at the PROTECO Site. Life Savers may also have arranged for transport of hazardous substances with Ponce Waste Disposal that were disposed of at the PROTECO Site.

48.     Waste sent by Life Savers to the PROTECO Site included but were not limited to "Chlorothene N. U.," 1,1,1, Trichloroethane, used motor oil, kerosene with water, kerosene with oil, xylene, potassium cyanide, sulfuric acid, chloroform, methanol, pyridine, chewing gum base in solution, benzene, glicarine, licosyne, "Varsol-shellsol" (a hydrocarbon solvent cleaning product), poisonous liquids, and flammable, poisonous liquids. Life Savers also sent the following wastes with RCRA characteristic hazardous waste codes: benzene (D038), methanol (U019), pyridine (U154), xylene (U239) and potassium cyanide (P098).

49.     The waste sent by Life Savers to the PROTECO Site contained CERCLA hazardous substances listed at 40 C.F.R. § 302.4, including benzene, 1,1,1, trichloroethane, methanol, pyridine, xylene, sulfuric acid, and potassium cyanide.

50.     Hazardous substances sent by Life Savers to the PROTECO Site have caused the GPG and GPG Members to incur response costs consistent with the NCP.

*Puerto Rico Investment Development Company*

51.     Puerto Rico Investment Development Company is the successor to Star-Kist Caribe, Inc. ("Star Kist"), which arranged for disposal of hazardous substances at the PROTECO

Site and which may have arranged for transport of hazardous substances with Servicios Carbareón that were disposed of at the PROTECO Site.

52.      Waste sent by Star-Kist to the PROTECO Site included but was not limited to methyl isobutyl ketone, isopropyl alcohol, xylene, methylene chloride and flammable liquids.

53.      The waste sent by Star Kist to the PROTECO Site contained CERCLA hazardous substances listed at 40 C.F.R. § 302.4, including methyl isobutyl ketone, xylene and methylene chloride as well as hazardous substances with RCRA-listed hazardous waste code D001, D007, D008, D010, F002, and F003 to the PROTECO Site.

54.      Hazardous substances sent by Star-Kist to the PROTECO Site have caused the GPG and GPG Members to incur response costs consistent with the NCP.

### Thermo King

55.      Defendant Thermo King is the successor in interest to the Westinghouse Entities, which arranged for the disposal of hazardous substances at the PROTECO Site and which may have arranged for transport of hazardous substances with Servicios Carbareón that were disposed of at the PROTECO Site.

56.      The waste sent by the Westinghouse Entities to the PROTECO Site included hydrochloric acid, combustible liquids, acid cleaners, makeup, transformer oil and lubricating oils.

57.      The waste sent by the Westinghouse Entities to the PROTECO Site contained CERCLA hazardous substances listed at 40 C.F.R. § 302.4, including hydrochloric acid, as well as hazardous substances with RCRA-listed hazardous waste code D001.

58.      Hazardous substances sent by the Westinghouse Entities to the PROTECO Site have caused the GPG and GPG Members to incur response costs consistent with the NCP.

### CERCLA Investigation of the PROTECO Site

59.     In 2017, USEPA concluded that PROTECO was not maintaining the site and was out of compliance with its post-closure care obligations.

60.     USEPA referred the PROTECO Site from the RCRA program to the CERCLA program to evaluate potential releases of hazardous substances from the Site.

61.     USEPA concluded that there has been a release or threat of release of hazardous substances from the PROTECO Site to the environment.

62.     Sampling to date has showed the presence of metals including mercury, aluminum, arsenic, antimony, barium, cadmium, chromium, lead, iron, and manganese, and volatile organic compounds ("VOCs") including tetrachloroethene ("PCE"), tricholorethylene ("TCE"), 1,1,1-trichloroethane ("1,1,1-TCA"), 1,2-dichloroethane ("1,2-DCA"), trans-1,2-dichloroethene ("trans-1,2-DCE"), and 1,1-dichloroethylene ("1,1-DCE") in the groundwater at the PROTECO Site.

63.     Sampling to date has showed semi-volatile organic compounds ("SVOCs"), VOCs, pesticides, metals (including arsenic, barium, cadmium, chromium, lead, mercury, selenium and silver), total petroleum hydrocarbons, and phenolics in the soil at the PROTECO Site.

64.     Mercury, PCE, TCE, 1,1,1-TCA, 1,2-DCA, trans,1-2-DCE, and 1,1-DCE are hazardous substances within the meaning of CERCLA section 101(14), 42 U.S.C. 9601(14).

65.     Sampling at the PROTECO Site shows that there has been a release or threat of release of hazardous substances to the environment at the PROTECO Site.

66.     On May 15, 2019, the PROTECO Site was placed on the National Priorities List ("NPL") by USEPA pursuant to CERCLA section 105, 42 U.S.C. § 9605.  84 Fed. Reg. 21708.

67.     In 2020, a number of GPG Members (the "ASAOC Respondents") signed the RI/FS ASAOC, which requires the ASAOC Respondents to conduct an RI/FS for the PROTECO Site.  Several GPG Members have become ASAOC Respondents by amendments to the RI/FS ASAOC since 2020.  The RI/FS ASAOC Respondents as of the filing of this Complaint are noted on Attachment A to this Complaint.

68.     Each ASAOC Respondent is jointly and severally responsible to complete the RI/FS work required by the RI/FS ASAOC.  In addition, GPG Members who are not ASAOC Respondents have agreed to participate in funding the RI/FS work required by the RI/FS ASAOC.  All GPG Members listed on Attachment A are either an ASAOC Respondent or have agreed to fund the work required by the RI/FS ASAOC.

69.     The work required by the RI/FS ASAOC is expected to cost at least $8 million, which will be incurred by the GPG and GPG Members.

70.     Each GPG Member listed on Attachment A to this Complaint has executed an assignment of its claims for costs related to the RI/FS work at the PROTECO Site in their entirety to the GPG and has agreed to be bound by any rulings entered by the Court in this proceeding.

71.     To date, the GPG Members have incurred over $4 million in response costs to perform the work required by the RI/FS ASAOC.

## COUNT 1: COST RECOVERY UNDER CERCLA § 107

72.     Plaintiff realleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

73.     CERCLA § 107(a)(1)-(4)(B) creates a private right of action for "any person" to recover "necessary costs of response" incurred "consistent with any national contingency plan," plus interest.  42 U.S.C. § 9607(a)(1)-(4)(B).

74.     Subject only to narrow defenses and limitations of liability set forth in CERCLA, these costs may be recovered from any entity that falls within the four categories of parties deemed liable by Congress when (1) a release or threatened release, (2) from a facility, (3) of a hazardous substance, (4) causes the incurrence of response costs.  CERCLA section 107(a)(1)-(4)(B), 42 U.S.C. § 9607(a)(1)-(4)(B).

75.     CERCLA section 101(22) defines the term "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant) . . . ."  42 U.S.C. § 9601(22).

76.     The substances disposed of, leaked, spilled, poured, discharged, escaped, leached, dumped or disposed of, including abandoned drums or other receptacles containing hazardous substances, at the PROTECO Site have been "released" within the meaning of CERCLA section 101(22), 42 U.S.C. § 9601(22).

77.     CERCLA section 101(9) defines a "facility" as "(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel."

78.     The PROTECO Site is a "facility" as defined by CERCLA section 101(9), 42 U.S.C. § 9601(9).

79.     The substances released at the PROTECO Site are "hazardous substances" within the meaning of CERCLA section 101(14) because they are listed at 40 C.F.R. § 302.4 as hazardous substances, are mixtures of materials that contain hazardous substances that are listed at 40 C.F.R. § 302.4, or have the characteristics identified in RCRA section 3001 (42 U.S.C. § 6921).  42 U.S.C. § 9601(14).

80.     The releases and threatened releases of hazardous substances at and from the PROTECO Site have caused, and will continue to cause, the GPG and the GPG Members to incur necessary costs of response that are consistent with the NCP.

81.     The four categories of parties that Congress deemed liable for cleanup costs under CERCLA include (1) owners and operators of facilities from which there was a release; (2) persons who owned or operated such facilities at the time hazardous substances were disposed of; (3) persons "who by contract, agreement, or otherwise arranged" for disposal, treatment or transport of hazardous substances; and (4) transporters who selected disposal or treatment sites. CERCLA § 107(a)(1)-(4)(B), 42 U.S.C. § 9607(a)(1)-(4)(B).

82.     Each Defendant arranged for disposal or treatment of hazardous substances at the PROTECO Site or arranged with a transporter for disposal or treatment of hazardous substances at the PROTECO Site within the meaning of CERCLA section 107(a)(3), 42 U.S.C. § 9607(a)(3).

83.     Defendants are jointly and severally liable for the costs incurred by the GPG and GPG Members to perform the RI/FS that are consistent with the NCP as a result of the disposal of hazardous substances at the PROTECO Site.

84.     Plaintiff is entitled to an award of the response costs incurred by the GPG and the GPG Members, plus interest under CERCLA section 107(a), 42 U.S.C. § 9607(a).

85.     Plaintiff is entitled to a declaratory judgment that the Defendants shall be jointly and severally liable for necessary future costs related to the RI/FS at the PROTECO Site that are consistent with the NCP pursuant to CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2).

## COUNT 2:  CONTRIBUTION UNDER CERCLA § 113(f)(3)(B)

86.     Plaintiff realleges and incorporates by reference paragraphs 1 through 54 as though fully set forth herein.

87.     CERCLA section 107(a)(1)-(4)(B) creates a private right of action for "any person" to recovery "necessary costs of response" incurred "consistent with any national contingency plan," plus interest.  42 U.S.C. § 9607(a)(1)-(4)(B).

88.     Subject only to narrow defenses and limitations of liability set forth in CERCLA, these costs may be recovered from any entity that falls within the four categories of parties deemed liable by Congress when (1) a release or threatened release, (2) from a facility, (3) of a hazardous substance, (4) causes the incurrence of response costs.  CERCLA section 107(a)(1)-(4)(B), 42 U.S.C. § 9607(a)(1)-(4)(B).

89.     CERCLA section 101(22) defines the term "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant) . . . ." 42 U.S.C. §  9601(22).

90.     The substances disposed of, leaked, spilled, poured, discharged, escaped, leached, dumped or disposed of, including abandoned drums or other receptacles containing hazardous substances, at the PROTECO Site have been "released" within the meaning of CERCLA section 101(22), 42 U.S.C. § 9601(22).

91.     CERCLA section 101(9) defines a "facility" as "(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel."

92.     The PROTECO Site is a "facility" as defined by CERCLA section 101(9), 42 U.S.C. § 9601(9).

93.     The substances released at the PROTECO Site are "hazardous substances" within the meaning of CERCLA section 101(14) because they are listed at 40 C.F.R. § 302.4 as hazardous substances, are mixtures of materials that contain hazardous substances that are listed at 40 C.F.R. § 302.4, or have the characteristics identified in RCRA section 3001 (42 U.S.C. § 6921).  42 U.S.C. § 9601(14).

94.     The releases and threatened releases of hazardous substances at and from the PROTECO Site have caused, and will continue to cause, GPG Members to incur necessary costs of response that are consistent with the NCP.

95.     The four categories of parties that Congress deemed liable for cleanup costs under CERCLA include (1) owners and operators of facilities from which there was a release; (2) persons who owned or operated such facilities at the time hazardous substances were disposed of; (3) persons "who by contract, agreement, or otherwise arranged" for disposal, treatment or transport of hazardous substances; and (4) transporters who selected disposal or treatment sites. CERCLA section 107(a)(1)-(4)(B), 42 U.S.C. § 9607(a)(1)-(4)(B).

96.     Each Defendant arranged for disposal or treatment of hazardous substances at the PROTECO Site or arranged with a transporter for disposal or treatment of hazardous substances at the PROTECO Site within the meaning of CERCLA section 107(a)(3), 42 U.S.C. § 9607(a)(3).

97.     CERCLA section 113(f)(3)(B) provides that "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all the costs of such action in an administrative . . . settlement may seek contribution from any person who is not a party to" such a settlement.  42 U.S.C. § 9613(f)(3)(B).

98.     Pursuant to the RI/FS ASAOC, the ASAOC Respondents resolved their liability to the United States for response costs related to the RI/FS.  The GPG and GPG Members have incurred and will incur in the future more than their fair share, equitable share of response costs.

99.     Under CERCLA section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), the GPG is entitled to contribution from each Defendant for necessary response costs incurred by the GPG and GPG Members consistent with the NCP in connection with the RI/FS ASAOC and work performed in identifying other Potentially Responsible Parties ("PRPs") for such response costs and other recoverable costs.  Plaintiff also is entitled to an allocation by the Court of the response costs incurred and future response costs, as between the GPG and GPG Members on the one hand and Defendants on the other, using such equitable factors as the Court determines are appropriate.

100.    The GPG and GPG Members have incurred and will incur necessary response costs consistent with the NCP to perform the work required by the RI/FS ASAOC and are entitled to contribution from Defendants for those costs pursuant to CERCLA section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B).

## COUNT 3: DECLARATORY JUDGMENT

101.    Plaintiff realleges and incorporates by reference paragraphs 1 through 70 as though fully set forth herein.

102.    Defendants are liable under CERCLA section 107(a), 42 U.S.C. § 9607(a), because each Defendant is a person as defined by CERCLA section 101(21), 42 U.S.C. § 9601(21), and is liable under CERCLA section 107(a), 42 U.S.C. § 9607(a), as described in greater detail above.

103.    Releases or threatened releases of hazardous substances at or from the PROTECO Site have caused and will continue to cause the GPG and GPG Members to incur necessary response costs consistent with the NCP.

104.    An actual controversy exists, within the meaning of 28 U.S.C. § 2201 and CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2), between the GPG and its Members on the one hand and Defendants on the other regarding their respective rights and responsibilities for necessary response costs incurred and to be incurred by the GPG and GPG Members consistent with the NCP in connection with the RI/FS ASAOC, preparation of the RI/FS, and work performed in identifying other PRPs for such response costs, and for other necessary response costs to be incurred by the GPG and GPG Members in connection with the RI/FS for the PROTECO Site.

105.    Pursuant to CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201-2202, Plaintiff is entitled to a declaratory judgment on liability for response costs under CERCLA section 107(a), 42 U.S.C. § 9607(a) and/or CERCLA section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B) that will be binding in any subsequent action or actions to recover further response costs under the RI/FS ASAOC and work performed in identifying other PRPs for response costs.

106. If and when USEPA selects a remedy or interim remedy for the PROTECO Site or assesses damages for injury to, destruction of, or loss of natural resources for any portion of the PROTECO Site, Plaintiff reserves the right to amend to seek additional declaratory or other relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgement as follows:

On the first claim for relief, with respect to all Defendants, Plaintiff asks this Court to:

A. Declare, pursuant to CERCLA section 107(a) that Defendants are jointly and severally liable for any necessary costs related to the RI/FS ASAOC incurred in connection with the release or threatened release of hazardous substances at or from the PROTECO Site; and

B. Order Defendants, jointly and severally, to pay Plaintiff an amount to be determined at trial to reimburse Plaintiff for necessary costs of response incurred by the GPG and GPG Members consistent with the NCP related to the RI/FS, including work performed in identifying other PRPs for such response costs, and to pay the Plaintiff pre-judgment interest at the rate mandated by Congress.

C. Award Plaintiff prejudgment interest, costs, and attorneys' and expert fees as allowed by law; and

D. Any other and further relief that the Court determines is just, equitable, and appropriate.

On the second claim for relief, with respect to all Defendants, Plaintiff asks this Court to:

A. Declare, pursuant to CERCLA section 113(f)(3)(b), that Defendants are liable for their shares, determined by the Court using such equitable factors as it determines are appropriate, of response costs incurred and to be incurred by the GPG and GPG Members, including costs incurred in connection with the RI/FS ASAOC and work performed in identifying other PRPs for such response costs, as a result of releases at or from the PROTECO Site;

B. Award Plaintiff an amount determined by the Court to satisfy the obligation of each Defendant for all necessary response costs incurred and to be incurred by the GPG and GPG Members, including costs incurred in connection with the RI/FS ASAOC and work performed in identifying other PRPs for such response costs; and

C. Award Plaintiff prejudgment interest, costs, and attorneys' and expert fees as allowed by law; and

D. Award Plaintiff any other and further relief that the Court determines is just, equitable, and appropriate.

On the third claim for relief, with respect to all Defendants, Plaintiff asks this Court to:

A. Declare that Defendants are jointly and severally liable for any necessary costs of response related to the RI/FS ASAOC incurred in connection with the release or threatened release of hazardous substances at or from the PROTECO Site;

B. Declare that Defendants are liable for all of their proper shares, determined by the Court using such equitable factors as the Court determines are appropriate, of the response costs incurred and to be incurred by the GPG and GPG Members related to the RI/FS ASAOC resulting from releases or threatened releases of hazardous substances at or from the PROTECO Site;

C. Declare that the Court's judgment on each Defendant's liability for response costs and/or damages is binding on any subsequent action or actions to recover further response costs required by the RI/FS ASAOC to complete the RI/FS;

D. Award Plaintiff an amount determined by the Court to satisfy the obligation of each Defendant for all necessary response costs incurred and to be incurred by the GPG and GPG Members, including in connection with the RI/FS ASAOC and work performed in identifying other PRPs for such response costs;

E. Award Plaintiff prejudgment interest, costs, and attorneys' and expert fees as allowed by law; and

F. Award Plaintiff any such other and further relief as the Court determines is just, equitable, and appropriate.


Respectfully submitted this 5th day of January, 2024.

**SEPULVADO, MALDONADO & COURET**
304 Ponce de León Avenue, Suite 990
San Juan, PR 00918
Tel: (787) 765-4949
Fax: (787) 294-0073
acouret@smclawpr.com
lsepulvado@smclawpr.com

*/s/ Albéniz Couret Fuentes*
Albéniz Couret Fuentes
USDC-PR Bar No. 222207

**VAN NESS FELDMAN LLP**
1050 Thomas Jefferson Street NW
Seventh Floor
Washington, DC 20015
Tel: (202)298-1800
Fax: (202)298-1900
mgoodstein@vnf.com
alynch@vnf.com

Michael D. Goodstein
ID No.: (*pro hac vice*)
Anne E. Lynch
ID No.: (*pro hac vice*)

*Counsel for Plaintiff*

**Attachment A (GPG Members)**

- AbbVie LTD.*

- BASF Agrochemical Products, B.V.*

- Becton Dickinson and Company

- Block Drug Company, Inc.*

- Boehringer Ingelheim Pharmaceuticals, Inc.*

- Checkpoint Caribbean Ltd.*

- Combe Incorporated

- Eli Lilly & Company

- EMD Millipore Corporation*

- General Electric Company (on behalf of itself and Caribe GE International of Puerto Rico, Inc.; GE Industrial of PR LLC; and GEA Caribbean Export LLC)*

- Henkel Puerto Rico, Inc.*

- HP Inc.*

- International Paper Company*

- Motorola Solutions, Inc.

- Paddock Enterprises, LLC

- Penuelas Technology Park, LLC

- Procter & Gamble International Operations S.A.*

- Puerto Rico Electric Power Authority*

- Roche Products Inc.*

- SmithKline Beecham Pharmaceuticals Co.*


* GPG Member is also currently a Respondent to the RI/FS ASAOC